**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

MICHAEL ANTHONY JONES                                                    PLAINTIFF

v.                                        No. 4:11CV00705 KGB-JTK

CAROLYN W. COLVIN,
**Acting Commissioner,**
**Social Security Administration**                                        DEFENDANT

**OPINION AND ORDER**

Plaintiff-claimant Michael Anthony Jones appeals the final decision of defendant Commissioner of the Social Security Administration[1] to deny his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (the "Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382. Mr. Jones asks this Court to reverse the Commissioner's decision and remand his case to the Social Security Administration ("SSA") for the award of benefits. Both parties have submitted appeal briefs. After considering the record, the arguments of the parties, and the applicable law, this Court affirms the Commissioner's decision.

**I.     Standard of Judicial Review**

When reviewing a decision denying an application for disability benefits, the Court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner made a legal error. *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits

---

[1] Carolyn W. Colvin was sworn in as Acting Commissioner of the Social Security Administration on February 14, 2013, replacing Michael J. Astrue. She has therefore been substituted as the defendant in this case pursuant to Fed. R. Civ. P. 25(d).

is limited to whether the decision is supported by substantial evidence in the record as a whole" (internal quotation marks omitted)); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled."). Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Slusser*, 557 F.3d at 925. In determining whether substantial evidence supports the Commissioner's decision, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports the decision, but the Court may not reverse the Commissioner's decision simply because substantial evidence supports a contrary decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The Court may not reweigh the evidence or try the issues *de novo*. *Harris v. Shalala*, 45 F.3d 1190 (8th Cir. 1995).

**II.     The Disputed Issues**

In this case, the parties do not dispute that Mr. Jones exhausted his administrative remedies. *See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions). Mr. Jones contends that the Administrative Law Judge ("ALJ") erred in the following ways: (1) Mr. Jones contends that the ALJ incorrectly found that Mr. Jones's non-substance-abuse-induced adjustment disorder, antisocial personality traits, fibromyalgia, arthritis (other than his left hip), anger control problems, and problems thinking

clearly were not severe impairments; (2) Mr. Jones contends that the ALJ erred in determining that Mr. Jones's impairments did not meet or medically equal a Listing in Appendix 1 of Subpart P, 20 C.F.R. § 404.1520(d); (3) Mr. Jones claims the ALJ erred in determining that Mr. Jones's subjective complaints were not entirely credible; and (4) Mr. Jones maintains the ALJ erred in determining that Mr. Jones had the residual functional capacity ("RFC") to perform the full range of sedentary work.

### III.    The Commissioner's Decision

The ALJ denied benefits at step five of the analysis, finding that, if Mr. Jones stopped his substance abuse, he would not be disabled because he had acquired work skills from his past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (Tr. 23).

The ALJ noted that, if a claimant is under a disability and if there is medical evidence of a substance abuse disorder, there is an issue as to whether the substance abuse disorder is a contributing factor material to the determination of disability under section 223(d)(2) and 1614(a)(3)(j) of the Act (Tr. 11).[2] The ALJ determined that Mr. Jones was last insured for disability insurance benefits on December 31, 2004 (Tr. 14, 36, 205).[3] The ALJ found that Mr. Jones's degenerative joint disease of the left hip (status-post hip replacement), hepatitis C, polysubstance abuse disorder, and substance-abuse-induced mood disorder were severe impairments (Tr. 14). The ALJ specifically found that Mr. Jones's non-substance-abuse-induced

---

[2] Public Law 104-121, effective March 29, 1996, prohibits disability entitlement for individuals whose alcohol or drug abuse is a contributing factor material to a finding of disability. *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a), 416.935(a).

[3] For Mr. Jones to establish entitlement to disability insurance benefits, he must establish that he became disabled on or before December 31, 2004. *See* 20 C.F.R. §§ 404.131, 404.315(a)(1); *see also Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

adjustment disorder, antisocial personality traits, fibromyalgia, arthritis (other than his left hip), anger control problems, and problems thinking clearly were not severe impairments (Tr. 14). The ALJ then engaged in the five-step sequential evaluation process for determining whether a person is disabled. *See* 20 C.F.R. § 404.1520. The ALJ made two sets of findings concerning the other issues remaining in the sequential evaluation process, one which included Mr. Jones's substance abuse and one that did not (Tr. 14-24).

### A. Findings that Included Substance Abuse

The ALJ determined that Mr. Jones did not have an impairment or combination of impairments that met or medically equaled a listed impairment (Tr. 14). The ALJ considered Listings 1.20, 5.05, 12.04, and 12.09 (Tr. 14). Specifically, in determining whether Mr. Jones's mental disorders, including his substance use, met listings 12.04 and 12.09, the ALJ determined that Mr. Jones had only mild restrictions in daily living; mild difficulties in social functioning; moderate difficulties in concentration, persistence, or pace when under the influence of drugs; and one or two episodes of decompensation (Tr. 14-15). The ALJ determined that Mr. Jones had the RFC to perform a limited range of unskilled, sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) (Tr. 15). Specifically, the ALJ found that Mr. Jones could occasionally lift or carry ten pounds; stand and/or walk two hours in an eight-hour workday; sit for six hours in an eight-hour workday; and push or pull ten pounds occasionally and less than ten pounds frequently (Tr. 15). Mentally, including Mr. Jones's substance abuse disorders, the ALJ found that Mr. Jones could understand, remember, and carry out simple job instructions; make judgments in simple work-related situations; respond appropriately to co-workers and supervisors with only incidental contact that is not necessary to perform the work; and respond appropriately to minor changes in the usual work routine (Tr. 15). The ALJ found that Mr. Jones was unable to

perform his past relevant work as a registered nurse, in part because although his past work of registered nursing is a skilled job typically performed at the medium exertional level, Mr. Jones had performed it at the heavy exertional level (Tr. 15).

The ALJ found that Mr. Jones's job skills did not transfer to other occupations within his RFC caused by his substance use disorders (Tr. 16). The ALJ noted that since Mr. Jones's alleged onset date, he had been classified as (1) a younger person, age 18 to 44, (2) a younger person, age 45-49, and (3) a person of advanced age (age 50-54) (Tr. 15-16).

### After Attaining Age 50

The ALJ determined that, considering all of Mr. Jones's impairments, including his substance use disorders, Mr. Jones would be disabled after he attained age 50 by direct application of Medical-Vocational Rule 201.14 (Tr. 16).

### From Age 45 Through Age 49

The ALJ determined that from age 45 through age 49, Mr. Jones's mental impairments including his substance abuse would not significantly affect his ability to perform unskilled, sedentary work (Tr. 16-17). An ALJ may use the grids even though there is a nonexertional impairment, if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's RFC to perform the full range of activities listed in the grids. *McGeorge v. Barnhart*, 321 F.3d 766, 768-69 (8th Cir. 2003); *Thompson v. Bowen*, 850 F.2d 346, 349-50 (8th Cir. 1988). The introduction to the grid rules for sedentary work states that approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(a). Therefore, using Rule 201.21 of the Medical-Vocational Guidelines (the grids) as a framework, the ALJ determined that Mr. Jones would not be disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App.

2, Table 1, § 201.21.

### From Age 41 Through Age 44

Again, the ALJ determined that from age 41 through age 44, Mr. Jones's mental impairments including his substance abuse would not significantly affect his ability to perform unskilled, sedentary work (Tr. 17). Therefore, using Rule 201.28 of the grids as a framework, the ALJ determined that Mr. Jones would not be disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 201.28.

### B.     The ALJ's Findings That Did Not Include Substance Abuse

The ALJ made the following findings that would apply if Mr. Jones stopped his substance abuse (Tr. 17-23). The ALJ determined that, if Mr. Jones stopped his substance abuse, his hip disorder and hepatitis C would continue to limit him to sedentary work (Tr. 17). The ALJ determined that, if Mr. Jones stopped his substance abuse, Mr. Jones would not have a severe mental impairment because he would have only (1) mild limitation in activities of daily living; (2) mild limitation in social functioning; (3) mild limitation in concentration, persistence, or pace; and (4) no episodes of decompensation (Tr. 17-18). If the Commissioner rates these areas of functioning as "none" or "mild," then the mental impairment qualifies as nonsevere. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

At step three, the ALJ determined that Mr. Jones would not have an impairment or combination of impairments that met or medically equaled a listed impairment (Tr. 18). Additionally, the ALJ found that, if Mr. Jones stopped his substance abuse, he would have the RFC to perform a full range of sedentary work (Tr. 18). The ALJ determined that, absent his substance abuse disorders, Mr. Jones would have no mental conditions that would cause more than a minimal effect on his ability to do basic work-related activities (Tr. 18). In comparison, the ALJ had

determined that, with substance abuse, Mr. Jones's mental limitations would reduce his skill level to unskilled work (Tr. 15-17).

When the ALJ considered whether Mr. Jones's impairments without substance abuse would cause more than a minimal effect on his ability to do basic work-related activities, the ALJ evaluated the credibility of Mr. Jones's subjective complaints (Tr. 18-22). Specifically, the ALJ found that without substance abuse, Mr. Jones's subjective complaints were not credible to the extent they were inconsistent with the ALJ's RFC determination (Tr. 18-19). In other words, the ALJ concluded that, without substance abuse, Mr. Jones's impairments did not prevent him from performing skilled or semi-skilled sedentary work (Tr. 18). At step four of the sequential evaluation process, the ALJ determined that even if Mr. Jones stopped his substance abuse, he would continue to be unable to perform his past relevant work as a registered nurse because, although that job was typically performed at the medium exertional level, Mr. Jones actually performed it at the heavy exertional level (Tr. 22-23). However, after considering testimony from a vocational expert ("VE"), the ALJ determined that, if Mr. Jones stopped his substance use, he had acquired work skills from his past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (Tr. 23, 57). Therefore, the ALJ determined that, if Mr. Jones stopped his substance use, he would not be disabled at any time from his alleged onset date through the date of the ALJ's decision (Tr. 23-24).

**IV.     Analysis**

Mr. Jones has a 4-year college degree in nursing (Tr. 37, 216). He has past work experience as a registered nurse (Tr. 15, 56). In his application documents, Mr. Jones alleged that he became disabled on April 21, 2000, due to mental issues, problems controlling anger, depression, problems thinking clearly, fibromyalgia, and arthritis (Tr. 11, 146, 153, 210). The

ALJ made a determination that Mr. Jones had not engaged in substantial gainful activity since April 21, 2000 (Tr. 14). Mr. Jones was 41 years old on his alleged onset date and 52 years old when the ALJ issued his decision (Tr. 15-16, 37, 146, 153).

The Court concludes: (1) substantial evidence supports the ALJ's analysis of Mr. Jones's severe impairments; (2) substantial evidence supports the ALJ's analysis that Mr. Jones's impairments did not meet or medically equal the requirements of a listing; (3) substantial evidence supports the ALJ's credibility determination; and (4) substantial evidence supports the ALJ's RFC determinations. Moreover, the ALJ made no legal errors when reaching his decisions on these issues.

### (1) The ALJ's Determination Regarding Mr. Jones's Severe Impairments

The second step of the review process requires the ALJ to determine the severity of Mr. Jones's alleged impairment or combination of impairments and to determine specifically whether a severe impairment or combination of impairments significantly limits Mr. Jones's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Court concludes that substantial evidence supports the ALJ's determination that Mr. Jones's substance-abuse-induced mental impairments were severe, but his non-substance-abuse-induced mental impairments were not (Tr. 14).

The ALJ noted that Mr. Jones had a long and significant history of polysubstance abuse, with indications of an associated substance-induced mood disorder (Tr. 19). The evidence, including Mr. Jones's own testimony, showed that Mr. Jones used intravenous (IV) drugs until 2002 and abused methamphetamine until February 2009 (Tr. 19, 41, 45). The ALJ also noted that Mr. Jones had abused alcohol as late as March 2009 and had abused prescription pain medications in the past (Tr. 19). This Court notes that the Commissioner highlights in his response brief that

there is some evidence in the record that calls into question when Mr. Jones's alcohol and illegal drug use ended (Dkt. No. 17, at 9-10).

The ALJ observed that Mr. Jones had been in rehabilitation five times as reported to Kenneth Hobby, Ph.D., a psychologist who performed a consultative mental status examination and evaluation of adaptive functioning, and the ALJ reasoned that the evidence showed that Mr. Jones's mental symptoms were substance induced (Tr. 19, 606). Mr. Jones had received little mental health treatment other than rehabilitation for drugs and alcohol (Tr. 19). Further, the ALJ observed that Mr. Jones's longitudinal mental health treatment history showed that episodes of symptom exacerbation had been closely linked to substance abuse, and that his severe symptoms had largely abated when he ceased abusing drugs and alcohol (Tr. 19) (referring to Exhibit 5F (Tr. 509-553), and 6F (Tr. 554-602)).

Specific records in evidence demonstrate that Mr. Jones's treatment ended more than one time because of his non-compliance (Tr. 741-42; 720-21; 705-06). A claimant's failure to follow a recommended course of treatment weighs against his credibility. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). The ALJ observed that Mr. Jones received little mental health treatment other than rehabilitation for drugs and alcohol (Tr. 19). The ALJ cited in his decision Exhibit 5F and 6F, among others. Exhibit 5F contains records from Baptist Health Medical Center, which show inpatient treatment for Mr. Jones from October 26, 2001, until October 29, 2001, for (1) alcohol dependence and withdrawal and (2) methamphetamine dependence, substance remission (Tr. 532-51). Exhibit 5F also contains Mr. Jones's March 2009 inpatient treatment records, in which he admitted using methamphetamine and had a positive drug screen (Tr. 509, 512, 515). Exhibit 6F contains records from Health Resources of Arkansas, which dealt primarily with Mr. Jones's drug and alcohol problems and other mental health difficulties from

August 2005 through May 2009 (Tr. 554-602). Exhibit 23F, also from Health Resources of Arkansas, contains mostly duplicates of Exhibit 6F, with some additional records (Tr. 704-77).

The ALJ also referred to Dr. Hobby's May 2009 findings in support of his decision that Mr. Jones's non-substance-abuse-induced adjustment disorder and antisocial personality traits, including alleged anger problems and problems thinking clearly, were not severe mental impairments (Tr. 14, 19, 603-14). As the ALJ noted, Mr. Jones told Dr. Hobby that he needed no help with personal care, and he could prepare his own meals, cooperate with medical advice, take his medications without help, and autonomously perform daily household chores (Tr. 19, 605). Mr. Jones also reported that he could drive on unfamiliar routes; shop adequately for groceries, clothing, and personal items; use a checkbook with no problems to pay bills; and use cash for purchases (Tr. 19, 611). Dr. Hobby reported that Mr. Jones was well groomed and appeared to pay attention to his appearance (Tr. 20, 606-07). In addition, Dr. Hobby stated that Mr. Jones's emotional control was good, and his mood and affect were appropriate (Tr. 20, 607). Dr. Hobby observed no significant limitations in Mr. Jones's speech or language and no problems in Mr. Jones's thought process or thought content (Tr. 20, 607-08). Moreover, the ALJ pointed out that Dr. Hobby estimated Mr. Jones's intellectual functioning at a normal level (Tr. 20, 609).

Mr. Jones reported to Dr. Hobby that he got along "pretty well" with his parents and got along "well" with his siblings (Tr. 20, 611). In fact, Dr. Hobby observed no significant limitations in Mr. Jones's capacity to communicate and interact in a socially adequate manner (Tr. 20, 611). Dr. Hobby's report showed that Mr. Jones denied suicidal or homicidal thoughts, did not claim any auditory or visual limitations, was oriented in all spheres, and had good contact with reality (Tr. 20, 608). Dr. Hobby stated that Mr. Jones had the ability to understand, carry out, and remember basic work-like tasks and he would probably respond adequately to work pressure in a

work-like setting (Tr. 20, 612).

The ALJ further noted that, as a result of this July 2009 examination, Dr. Hobby concluded that Mr. Jones's "*mood symptoms could [have] been induced by substance use*" (Tr. 20, 610) (emphasis added by ALJ). Dr. Hobby diagnosed adjustment disorder with depressed mood; polysubstance dependence, currently in remission by his report; and antisocial personality traits (Tr. 20, 601). Dr. Hobby assigned Mr. Jones a current Global Assessment of Functioning ("GAF") score of 51-60 and a highest GAF score in the previous year of 61-70 (Tr. 20, 610). The ALJ noted that these GAF scores represented only mild to moderate symptoms (Tr. 20, 610).

Based on this, the Court concludes that substantial evidence supports the ALJ's determination that, if Mr. Jones stopped his substance use, he would have only mild limitation in activities of daily living; mild limitation in social functioning; mild limitation in concentration, persistence, or pace; and no episodes of decompensation (Tr. 17-18).

Mr. Jones contends that the ALJ should have found that his non-substance abuse induced adjustment disorder, antisocial personality traits, including anger problems, and problems thinking clearly were severe impairments (Tr. 14); (Dkt. No. 15, at 4). In support of this, Mr. Jones claims that while his substance abuse was in remission, he continued to have a GAF score below "acceptable" limits (Dkt. No. 15, at 4). The Court finds this argument unpersuasive.

A GAF score can be a useful tool because it serves as shorthand for a provider's overall impression of an individual's ability to function. *See Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition ("DSM IV") 27-37 (4th ed. Text revision 2000) (defining GAF scale). The inability "to keep a job" is associated with GAF scores of between 41 and 50, and the inability to work at all is a possible element of GAF scores between 31 and 40. *Id*. The Commissioner, however, has declined to endorse GAF scores in disability analysis and instead

conclusively determined that GAF scores have no "direct correlation" to disability adjudication under the regulations. *See* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000); *see Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010). The Eighth Circuit has held that a GAF score between 51 and 60 does not even signify a severe impairment under the regulations. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). The Eighth Circuit also has acknowledged that prior caselaw placing greater weight upon GAF scores failed to acknowledge the Commissioner's statement in 65 Fed. Reg. 50746. *See Jones*, 619 F.3d at 973-74, n.4.

Mr. Jones cites *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003), in support of his claims regarding his GAF scores. Mr. Jones also contends that he had several documented GAF scores below 50, citing scores on March 18, 2009, April 1, 2009, May 12, 2009, and June 2, 2009 (Dkt. No. 15, at 4). Unlike Brueggmann, who required in-patient hospitalization on several occasions even when sober, *id.* at 695, Mr. Jones's only inpatient hospitalization for mental impairments were for alcohol or drug abuse or dependence (Tr. 532-51; 524; 509-23). Record evidence also indicates that Mr. Jones's GAF scores have been lower in the range of 20 to 30 during periods when he is using alcohol or illegal drugs than when he is not (Tr. 509; 524; 532). During the period Mr. Jones stated he was maintaining sobriety, record evidence indicates GAF scores between 55 and 60 (Tr. 589, 595, 756, 762; 588, 753, 755; 583, 750). These records constitute substantial evidence supporting the ALJ's finding that, if Mr. Jones were to stop his substance abuse, he would have only mild symptoms and his mental impairments would not be severe (Tr. 17-18).

Moreover, Dr. Hobby performed his consultative examination during the time period Mr. Jones indicates he received GAF scores below 50. Dr. Hobby assigned Mr. Jones a GAF score of 51-60 and a highest GAF score in the previous year of 61-70 (Tr. 20, 610). There also is

conflicting information in the record regarding whether Mr. Jones was in remission during the period of March 18, 2009, through June 9, 2009, as he claims (Tr. 45). Although there are differences in the GAF scores between Health Resources of Arkansas and Dr. Hobby, these differences do not dictate this Court's rejecting the ALJ's findings. *See Sultan*, 368 F.3d at 863.

Substantial evidence supports the ALJ's findings regarding Mr. Jones's mental limitations, and the ALJ made no legal error in reaching his decision that Mr. Jones's substance-abuse-induced mental impairments were severe but that his non-substance-abuse-induced mental impairments were not (Tr. 14).

### (2) The ALJ's Determination Regarding Impairments

At the third step of the review process, to determine whether a claimant is disabled, the ALJ is required to determine if the impairments meet or equal a listed impairment in Appendix 1 of Subpart P, 20 C.F.R. 404.1520(d). Mr. Jones contends that the ALJ erred when he concluded that Mr. Jones did not have an impairment or combination of impairments that met or medically equaled a listed impairment (Tr. 14-15). Mr. Jones argues that, since the ALJ did not address all of the severe impairments in step two, the ALJ could not properly evaluate the combined effect of the impairments in step three of the process (Dkt. No. 15, at 4-5). This Court concludes that substantial evidence supports the ALJ's findings at step two and that the ALJ made no legal error in reaching his decision at step two. Therefore, the Court rejects Mr. Jones's challenge at step three. Substantial evidence supports the ALJ's determination that Mr. Jones's impairments did not meet or medically equal the requirements of a listing, and the ALJ made no legal error when reaching his decision at this stage.

### (3) The ALJ's Credibility Determination

The fifth and final step of the review process requires the ALJ to determine if the claimant

can work based upon his RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f). In assessing the RFC of a claimant, the ALJ must examine the limitations on the physical and mental abilities caused by the impairments and any related symptoms, such as pain. 20 C.F.R. § 404.1545. Mr. Jones maintains that the ALJ erred at step five of his analysis when he determined that there were jobs that exist in the economy that Mr. Jones could perform prior to reaching the age of 50 and that Mr. Jones was not disabled (Tr. 16-17). Mr. Jones disagrees with the ALJ's findings and contends that the ALJ erred in failing to consider all of the evidence presented when assessing Mr. Jones's credibility.

In evaluating a claimant's credibility, the adjudicator should consider such matters as (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984). While an ALJ must consider these factors, the ALJ's decision need not include a discussion of how every *Polaski* factor relates to the claimant's credibility. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).

Mr. Jones contends that, while the ALJ discussed some of the medical evidence, the ALJ did not adequately explain why the medical evidence was inconsistent with Mr. Jones's allegations of pain (Dkt. No. 15, at 7). Mr. Jones claims that instead the ALJ merely stated that Mr. Jones's physical symptoms were not credible to the extent they were inconsistent with the RFC (Tr. 19).

An ALJ may not discredit a claimant's subjective allegations of pain, discomfort or other disabling limitations simply because there is a lack of objective evidence; instead the ALJ may only discredit subjective complaints if they are inconsistent with the record as a whole. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994); *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir.

1990) (citing *Polanski*, 739 F.2d at 1322).

This Court concludes that the ALJ provided a proper evaluation of Mr. Jones's pain (Tr. 18-22). He made specific findings explaining his conclusion. *See Baker v. Secretary of Health and Human Services*, 955 F.2d 552, 555 (8th Cir. 1992). The ALJ considered Mr. Jones's testimony; he incorporated into his RFC determinations the limitations the evidence supported (Tr. 15, 18). The ALJ properly evaluated Mr. Jones's subjective complaints and found that Mr. Jones's subjective complaints were not credible to the extent they were inconsistent with his RFC determination (Tr. 19).

Specifically, the ALJ noted Mr. Jones alleged disability due to hepatitis C, which he contracted from a needle stick at St. Vincent's Hospital in 1994 (Tr. 20, 603). When evaluating this, the ALJ also noted that Mr. Jones had a history of IV drug abuse (Tr. 20). Mr. Jones's treatment records showed a formal diagnosis of hepatitis C at least as early as 2003 (Tr. 20, 492, 494). The ALJ referred to a statement from Eleanor A. Lipsmeyer, M.D., who stated that she had examined Mr. Jones in December 2003 (Tr. 20, 494). The ALJ reviewed the medical evidence in the record and reasoned that, since December 2003, Mr. Jones has undergone only minimal follow-up treatment for hepatitis C, he has taken over the counter NSAIDs for pain, and record evidence indicates that diagnostic laboratory results have not necessitated acute treatment for hepatitis C (Tr. 20). The ALJ also noted that Mr. Jones had alleged that his hepatitis C had caused episodes of flu-like symptoms, fatigue, malaise, and arthralgia to the degree that he cannot work (Tr. 20, 40-41). The ALJ observed that Mr. Jones was using IV drugs until 2002 and methamphetamine as recently as February 2009, which undermines Mr. Jones's credibility when asserting that his symptoms were primarily due to hepatitis C (Tr. 20, 41).

As for Mr. Jones's hip pain, the ALJ also noted that Mr. Jones alleged that he was disabled

because of left hip problems (Tr. 21). The ALJ acknowledged that Mr. Jones did experience ongoing left hip pain and was ultimately diagnosed with left hip degenerative joint disease (Tr. 21, 334). On August 5, 2010, Mr. Jones underwent a left total hip arthroplasty (Tr. 21, 684, 87). Record evidence indicates that the procedure was uneventful and that Mr. Jones tolerated it well (Tr. 21, 686). The ALJ noted the evidence indicated that this surgery was effective, and overall there was no persuasive evidence that indicated Mr. Jones's left hip precludes him from performing sedentary work (Tr. 21). Although Mr. Jones now claims in his brief that he experienced significant hip pain both before surgery and during his post-surgery recovery period, he cites no page in the transcript to support his argument (Dkt. No. 15, at 11).

The ALJ discussed other specific credibility factors as set out by SSR 96-7p and *Polaski* (Tr. 21-22). He determined the medical findings that were present were not consistent with the disabling level of symptoms Mr. Jones alleged (Tr. 21). The ALJ recognized that he could not disregard Mr. Jones's allegations solely on this basis, but this was a factor he could consider (Tr. 21). The lack of supporting medical evidence is one factor an ALJ may consider in evaluating the credibility of a claimant's complaints. *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). The ALJ also stated that, when he limited Mr. Jones to sedentary work, he gave due consideration to the fact that Mr. Jones might have some level of discomfort and limitation (Tr. 22).

With regard to aggravating factors and functional limitations, the ALJ considered Mr. Jones's allegations that he was almost wholly incapacitated by his conditions (Tr. 22). The ALJ concluded that none of Mr. Jones's physicians had placed this level of limitation on Mr. Jones and that there were no clinical findings in the record that corroborated this claim of extreme limitation (Tr. 22). *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

The ALJ reasoned that Mr. Jones's activities of daily living were inconsistent with Mr. Jones's alleged level of limitation (Tr. 22). In support of this determination, the ALJ cited Mr. Jones's testimony and his comments to Dr. Hobby regarding his activities (Tr. 22, 611). An ALJ may consider a claimant's "extensive daily activities." *Moore v. Astrue*, 572 F.3d 520, 524-25 (8th Cir. 2009); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007). The ALJ also noted that the medical evidence does not indicate Mr. Jones has sought out or had aggressive medical treatment or further surgical intervention for disabling pain, sought out emergency or other treatment at a frequency commensurate with the amount of severe pain alleged, or been prescribed extensive pain medication (Tr. 22).

The ALJ considered the opinions of the state agency medical consultants, pursuant to SSR 96-6p (Tr. 22). Findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of non-examining sources at the administrative law judge level of administrative review. SSR 96-6p. The ALJ specifically noted that, since the time of these opinions, the record had been supplemented with testimony and additional medical evidence (Tr. 22). He also concluded that his RFC determination was consistent with the record as a whole (Tr. 22).

Substantial evidence supports the ALJ's credibility determination at step five, and the ALJ made no legal error when reaching his decision at this stage.

### (4) The ALJ's RFC Determinations

If a claimant demonstrates that he cannot perform his past relevant work, the Commissioner bears the burden of proving that his functional capacity, age, education, and work experience allow him to perform other work in the national economy. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Mr. Jones asserts that the ALJ erred in this determination at step five.

17

Mr. Jones asserts that the ALJ was required to consider the opinions of the state agency medical consultant when formulating his RFC determinations (Dkt. No. 15, at 7-8). Social Security Regulation 96-2p dictates that the ALJ must give weight to the treating physician's assessment and "that even if a medical source's opinion is not entitled to controlling weight it does not necessarily mean it is rejected but can still be entitled to deference and may be adopted by the adjudicator." The ALJ is "not free to ignore medical evidence but rather must consider the whole record." *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000). This Court concludes that, based on the record as a whole, the ALJ considered these opinions but reasonably determined that, after the state agency medical consultants offered their opinions in May 2009 and June 2009, the record was supplemented with testimony and additional medical evidence (Tr. 22). Accordingly, the ALJ was not obligated to adopt the opinions of the state agency medical consultants.

This Court also concludes that substantial evidence supports the RFC determination the ALJ did reach. In both his RFC determinations, the ALJ specifically set out the specific physical limitations associated with sedentary work (Tr. 15, 18). With his first RFC determination, the ALJ set out the specific mental limitations that Mr. Jones would have with his substance abuse disorders (Tr. 15). The ALJ did not include any mental limitations with his second RFC determination because he determined that, absent his substance abuse disorders, Mr. Jones had no mental conditions that caused more than a minimal effect on his ability to do basic work-related activities (Tr. 18). Further, the ALJ specifically addressed in both of his RFC determinations the seven strength demands for exertional capacity and addressed each demand (Tr. 15, 18). For these reasons, the Court finds unpersuasive Mr. Jones's claim that the ALJ did not provide a function-by-function assessment of his limitations (Dkt. No. 15, at 8-11).

Although Mr. Jones argues in his brief that he could not perform the prolonged sitting

requirements of sedentary work due to his hip replacement before surgery and during his post-surgery recovery period, he does not refer to any specific page number in the transcript to support his arguments nor does he allege how long he was incapacitated after his hip surgery (Dkt. No. 15, at 11).

Mr. Jones also raises in connection with this argument the issue of whether he would have a mental impairment if he discontinued the use of drugs and alcohol. The Court has considered and addressed these issues previously in its analysis.

Mr. Jones suggests that the RFC is a medical question and that some medical evidence must support the ALJ's RFC determination (Dkt. No. 15, at 12). The determination of RFC is an administrative assessment which is based on consideration of all evidence in the record and is reserved solely to the Commissioner. SSR96-5p; 96-8p. Although a limited shift in the burden of proof occurs at step five to produce vocational evidence, the burden of persuasion always remains on the claimant. *See* 68 Fed. Reg. 51153, 51155 (August 26, 2003); *see also Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004); *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004). The ALJ considered all of Mr. Jones's physical and mental impairments, considered the record evidence, and posed a sufficient and proper hypothetical to a VE. The ALJ's RFC decision is supported by substantial evidence. *See Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

Because this Court determines that the ALJ's RFC assessment is supported by substantial evidence, this Court sustains the ALJ's step five finding. The ALJ made no legal error in reaching his conclusion on this point.

## V. Conclusion

Having determined substantial evidence supports the Commissioner's denial of Mr. Jones's applications for disability benefits, and the Commissioner made no legal error, the Court DENIES Mr. Jones's request for relief and AFFIRMS the Commissioner's decision.

IT IS SO ORDERED this 27th day of March, 2013.

_____
Kristine G. Baker
United States District Judge